**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

SOMAR COMMUNICATIONS, INC.,        *

      **Plaintiff,**                   *

                                *

**v.**                         **Case No.:  PWG-14-3399**

                                *

THE CINCINNATI INSURANCE CO.,       *

      **Defendant.**

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM AND ORDER**

Plaintiff seeks to recover against its insurance company on two counts, the second of which is a claim for insurance bad faith that Defendant insists is subject to dismissal because Plaintiff did not exhaust its administrative remedies by bringing the claim first to the Maryland Insurance Administration ("the Administration").[1] Because the applicable limit of liability does not exceed $1 million, Plaintiff is required to bring its insurance bad faith claim to the Administration before stating its claim before this Court.  It has not.  Therefore, I will grant Defendant's motion and dismiss Count II.  Count I will continue.

## I.     FACTUAL BACKGROUND

Defendant issued an insurance policy ("the Policy") for July 21, 2011 through July 21, 2012 for real property, buildings, radio towers, and personal property that Plaintiff owned at multiple addresses, including four radio towers ("Towers") at 43835 St. Andrews Church Road,

---

[1]   The parties fully briefed the motion.  *See* ECF Nos. 10, 10-1, 15, 16.  A hearing is not necessary.  *See* Loc. R. 105.6.  The parties agree that Maryland law applies.  *See* Def.'s Mot. ¶ 2; Pl.'s Opp'n 4.

California, Maryland ("SAC Property").[2]  Compl. ¶¶ 1, 3, 4, ECF No. 2; Policy, Compl. Ex. A.,

ECF No. 2-1.  Plaintiff then lost two of the Towers to "severe weather damage[]" that destroyed

them completely on August 21, 2011.  Compl. ¶ 9.  Defendant refused to pay Plaintiff the

amount Plaintiff sought under the Policy, but agreed to pay a lesser amount without prejudice to

Plaintiff seeking further compensation under the Policy.  *Id.* ¶¶ 12–15.  Plaintiff brought this

two-count suit to recover the balance of the compensation it sought, claiming breach of contract

(Count I) and "lack of good faith," which commonly is referred to as "insurance bad faith"

(Count II).  *Id.* ¶¶ 20–28.

Defendant moves to dismiss Count II for failure to comply with the "administrative

condition precedent generally applicable to judicial actions for first party bad faith, requiring any

such claim to be presented, initially, to the Maryland Insurance Administration."  Def.'s Mot.

¶ 3 (citing Md. Code Ann., Ins. § 27-1001; Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c)(1)).

Defendant insists that "the applicable coverage sets forth a limit of liability of only $100,000.00

per tower and under the allegations in the Complaint, only two towers were damaged," such that

"[t]he total potential limit of liability is far less than one million dollars," the minimum amount

for filing suit in this case without proceeding first before the Administration.  *Id.* ¶ 4.

## II.   STANDARD OF REVIEW

When, as here, a defendant moves to dismiss for failure to exhaust administrative

remedies, asserting that "a complaint simply fails to allege facts upon which subject matter

---

[2] For the purposes of resolving Defendant's motion to dismiss Count II, I accept as true the facts alleged in Plaintiff's Complaint, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), as well as the facts established by the insurance policy attached to the Complaint and both parties' briefings. *See Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

jurisdiction can be based," it is a Fed. R. Civ. P. 12(b)(1) motion for lack of subject matter jurisdiction, and "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013). Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see In re KBR, Inc., Burn Pit Litig.*, 925 F. Supp. 2d 752, 758 (D. Md. 2013) (quoting *Kerns*, 585 F.3d at 192). This Court must act "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted).

## III.   DISCUSSION

Insurance bad faith is a statutory cause of action under Maryland law, but it is not available until a party first has pursued its claim to a final decision before the Administration. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c)(1), (d)(2); Md. Code Ann., Ins. § 27-1001(c)(1), (d)(1).  One exception to this requirement that an insured exhaust its administrative remedy is that an action "under a commercial insurance policy on a claim with respect to which the applicable limit of liability exceeds $1,000,000" may be filed in court without first seeking relief before the Administration.  Cts. & Jud. Proc. § 3-1701(c)(2)(iii); Ins. § 27-1001(c)(2)(iii).

Cts. & Jud. Proc. § 3-1701(c)–(d) provides:

(c) *Time for filing; exceptions.* — (1) Except as provided in paragraph (2) of this subsection, a party may not file an action under this subtitle before the date of a final decision under § 27-1001 of the Insurance Article.

(2) Paragraph (1) of this subsection does not apply to an action:

. . .

  (iii) Under a commercial insurance policy on a claim with respect to which the applicable limit of liability exceeds $1,000,000.

(d) *Civil action to determine coverage and entitlement to payment; alleging that insurer failed to act in good faith; and seeking damages.* — This section applies only in a civil action:

  (1) (i) To determine the coverage that exists under the insurer's insurance policy; or

   (ii) To determine the extent to which the insured is entitled to receive payment from the insurer for a covered loss;

  (2) That alleges that the insurer failed to act in good faith; and

  (3) That seeks, in addition to the actual damages under the policy, to recover expenses and litigation costs, and interest on those expenses or costs, under subsection (e) of this section.

Ins. § 27-1001(b)–(d) provides:

  (b) *Scope.* — This section applies only to actions under § 3-1701 of the Courts Article.

  (c) *Prerequisite to action filed under § 3-1701 of the Courts Article; exceptions.* — (1) Except as provided in paragraph (2) of this subsection, a person may not bring or pursue an action under § 3-1701 of the Courts Article in a court unless the person complies with this section.

  (2) Paragraph (1) of this subsection does not apply to an action:

   (iii) under a commercial insurance policy on a claim with respect to which the applicable limit of liability exceeds $1,000,000.

  (d) *Procedure.* — (1) A complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed with the Administration.
  . . .

As Defendant sees it, the limit of liability for the Towers is $100,000 for each tower, such that Cts. & Jud. Proc. § 3-1701(c)(2)(iii) and Ins. § 27-1001(c)(2)(iii) are inapplicable and Plaintiff cannot bring this claim in court without first exhausting its administrative remedies. Def.'s Mem. 2. But, in Plaintiff's view, "Plaintiff has pleaded, and the policy demonstrates, that the third exception applies as the applicable limit of the commercial policy on which the action is brought, exceeds $1,000,000." Pl.'s Opp'n 5.

It is true that Plaintiff claims that "[t]he Policy is a commercial insurance policy on a claim with respect to which the applicable limit of liability exceeds $1,000,000." Compl. ¶ 6. But, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). Plaintiff attached the ninety-page Policy to the Complaint, and both parties attach the section of the Policy with the heading "Radio and Television Tower / and Equipment Coverage Part Declarations" ("Tower Declarations") to their briefings. *See* Tower Decl., Def.'s Mem. Ex., ECF No. 10-2; Tower Decl., Pl.'s Opp'n Ex. 4, ECF No. 15-4. As part of the Policy at issue in this case, the Tower Declarations are integral to the Complaint, and given that both parties attach them to their briefings, their authenticity is undisputed. Therefore, I may consider them. *See Sposato*, 2013 WL 1308582, at *2.

Under the subsection "Coverage Provisions," the Tower Declarations state: "Each item that is covered must be described below or on a schedule that is a part of this policy. A Limit of Insurance must be shown for each item. This is the most that we will pay for a loss to that item." Tower Decl. 1. The subsection describes towers at other locations and sets limits of insurance ranging from $35,000 to $100,000 for each tower, and then it states "REFER TO MA950." *Id.*

The page numbered MA950, which has the heading "Radio and Television Tower/And Equipment Coverage Supplemental lists four Towers at the SAC Property. *Id.* at 3. For each, the "Limit of Insurance" listed is "100,000." *Id.* Indeed, Plaintiff acknowledges this limit, noting in its Opposition the "breakdown of Coverages" and that it includes "$100,000 each for towers 5-1, 5-2, 5-3 and 5-4" at the SAC Property. Pl.'s Opp'n 5–6 & n. 23.

Undeterred, Plaintiff contends that the "applicable limit of liability" is the "total limits of liability under Policy [for] all loc[ations]," or $2,498,000. *Id.* at 6. Plaintiff also argues that, considering "additional coverages which were purchased by the Plaintiff," the coverage for its SAC Property alone exceeds $1 million.[3] Initial coverage for Plaintiff's SAC Property included $104,000 for the building, $50,000 for business personal property, $100,000 each for the four Towers, and $150,000 for "Utility," for a total of $704,000. *Id.* at 5–6. Plaintiff asserts that it acquired additional coverage of $325,000 under a Commercial Property Expanded Coverage Endorsement ("Endorsement"), Pl.'s Opp'n Ex. 5, ECF No. 15-5, and additional coverage of $345,000 under an Electronic Data Processing Equipment Coverage Form ("Form"), Pl.'s Opp'n Ex. 6, ECF No. 15-6. *See* Pl.'s Opp'n 7–8. The Endorsement and Form provide additional coverage totaling $670,000.[4] Thus, assuming that the Endorsement and Form apply to the SAC Property, coverage for Plaintiff's SAC Property totals the sum of $704,000 and $670,000, or $1,374,000, which is, indeed, well over $1 million.

---

[3] Coverage for Plaintiff's SAC Property includes $104,000 for the building, $50,000 for business personal property, $100,000 each for the four Towers, and $150,000 for "Utility." Pl.'s Opp'n 5–6.

[4] Plaintiff notes that "[t]he aggregate of the coverages which are found under the 'Commercial Property Expanded Coverage Endorsement' aggregate $325,000," and the Form "provides an additional $345,000 in coverage." Pl.'s Opp'n 7–8. Plaintiff then adds the coverage together and erroneously arrives at the sum of $697,000, rather than $670,000. Also, Plaintiff, without explanation, adds $697,000 *and* $325,000, instead of $345,000 and $325,000, or $670,000, to the total coverage for the SAC Property.

Plaintiff's reliance on *Bierman v. United Farm Family Ins. Co.*, No. RDB-12-2445, 2013 WL 1897781 (D. Md. May 6, 2013), as a basis for aggregating these limits is misplaced.  In *Bierman*, the insured had three separate policies with the insurer and "argue[d] that the aggregate liability limit of their three insurance policies with Farm Family exceed[ed] $1,000,000." *Id.* at *7.  In determining whether  Ins. § 27-1001(c)(2)(iii) applied, the Court found that the contract was ambiguous because "the parties d[id] not point out, and this Court [could] not find, any specific provision of the insurance policies that states whether the liability limits on the Essex property [could] be aggregated." *Id.* at *8.  Therefore, the Court "interpret[ed] the policies in favor of Plaintiffs and against the drafter," concluding that "the liability limits of the insurance policies on the Essex property [could] be aggregated." *Id.*  Plaintiff contends that "[h]ere, just as in *Bierman*, there is nothing in the policy which provides whether the various limits set out above can be aggregated, and therefore, they can be aggregated."  Pl.'s Opp'n 11. To the contrary, this case is unlike *Bierman* because here, only one Policy is at issue.

Moreover, contract language is ambiguous "if, to a reasonably prudent person, the language used is susceptible of more than one meaning and not when one of the parties disagrees as to the meaning of the subject language." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 489 (Md. 1985).  Here, the Policy clearly states separate limits of liability for different covered property, such as the $100,000 limit for each of the Towers.  *E.g.*, Tower Decl. 1. Further, the Tower Declarations provide: "Each item that is covered must be described below or on a schedule that is a part of this policy.  A Limit of Insurance must be shown for each item. *This is the most that we will pay for a loss to that item*." *Id.* (emphasis added).  This language unambiguously states that the insurance company will not pay more than the limit shown for each covered item, that is, the limits cannot be aggregated.  *See id.* When construing an

unambiguous contract, "courts focus on the four corners of the agreement[,] and ascribe to the contract's language its customary, ordinary, and accepted meaning." *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 670 (Md. Ct. Spec. App. 2012) (citations and quotation marks omitted); *see 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 23 (Md. 2013). In these circumstances, the contract's construction is "an issue of law for resolution by the trial judge." *Bd. of Educ. of Charles Cnty. v. Plymouth Rubber Co.*, 569 A.2d 1288, 1296 (Md. Ct. Spec. App. 1990). Thus, as a matter of law, the Policy limits cannot be aggregated, based on the unambiguous language of the Policy and, specifically, the Tower Declarations. *See* Tower Decl. 1; *Dynacorp*, 56 A.3d at 670.

Consequently, the liability limit is $100,000 on each of the Towers. Two Towers were destroyed, and Plaintiff seeks coverage on those two Towers. That translates to an applicable limit on liability of $200,000, which is considerably less than $1 million. Even assuming, *arguendo*, that the additional coverage in the Endorsement and Form modified the Policy such that it could be aggregated, and assuming that it applied in full to the two Towers, the total coverage for the two Towers would be only $670,000 greater, or $870,000, and still less than $1 million. Because the applicable limit of liability does not exceed $1 million, Plaintiff must pursue its claim before the Administration to a final determination before it may bring an insurance bad faith claim in this Court. *See* Ins. § 27-1001(c), (d); Cts. & Jud. Proc. § 3-1701(c), (d). Plaintiff's bad faith claim is dismissed without prejudice for failure to exhaust administrative remedies. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); Fed. R. Civ. P. 12(b)(1).

**<u>ORDER</u>**

Accordingly, it is, this 3rd day of August, 2015, hereby ORDERED that

1. Defendant's Motion to Dismiss Count II, ECF No. 10, IS GRANTED; and

2. Count II IS DISMISSED.

I will enter a Case Management Order, Scheduling Order, and Discovery Order to govern the remainder of the case.


_____/S/_____
Paul W. Grimm
United States District Judge

lyb